PETERSON, J.
Priority of interest in Florida Alcoholic Beverage License No. 74-475 COP, Audit Number 28264 (License) is contested in this appeal. The trial court awarded the License to appellee, Lomar, Inc. (Lomar), the owner of the premises on which a cocktail lounge utilizing the License is located, instead of to appellant, a trust (La-chance Trust), that had a security interest in the License to secure an indebtedness of $50,000.
When Lomar, the original holder of the License, leased the premises to 701 Ridge-wood Corporation, it included a provision in the lease that “arranged for the assignment and set over to the tenant the ... license to be used solely in conjunction with the premises.” Other provisions required 701 Ridgewood Corporation to renew the License from year to year at its expense. It also included the provision that:
Such ... license can be transferred only with this lease and with the written consent of ... [Lomar] and shall revert and be returned to ... [Lomar] upon the termination of this lease, whether by lapse of time or otherwise.... The assignment of said ... license as herein provided for shall be completed as soon as practical.
[[Image here]]
Such alcoholic beverage license can be transferred only with this lease and with the written consent of the Landlord and shall revert and be returned to the Landlord, or its nominee, upon the termination of this lease, whether by *1024 lapse of time or otherwise. If the Tenant of any sub-Tenant shall engage in any illegal and/or improper operation, which will make such alcoholic beverage license subject to suspension or revocation, the' Landlord’ may immediately terminate this lease and require a reassignment of the alcoholic beverage license to it....
To further protect the Landlord in connection with said alcoholic beverage license, the Tenant will execute such additional instruments as may be necessary from time to time, and to protect the Landlord, the Tenant’s corporate stock, with, assignment, thereof, executed in blank, is to be left in escrow with a person or persons to- be named by the .Landlord, with a blank assignment of said alcoholic beverage license.
* * *
[S]o that a proper record of this lease, in connection with the alcoholic beverage license, may be made on the. records of the State Beverage Department of Florida, in connection with said alcoholic beverage license and any renewals of said alcoholic beverage license during the term of this lease.
A copy of the lease was sent to the Division of Alcoholic Beverages and Tobacco (Division) and was on file with the Division headquarters in Tallahassee and its local office in Volusia County at all times material to the. transaction involved in this case.
701 Ridgewood Corporation subsequently subleased the premises to Desperado’s of Holly Hill, Inc. (Desperado’s). Desperado’s assumed the provisions of the lease by written agreement with Lomar in which the following reference was made to the License:
8) Inventory of equipment as of the date of this agreement which is subject to the lease is attached together with photocopy of liquor license subject to terms of the lease as extended.
A month earlier, Desperado’s had begun the application procedure with the Division to transfer the License to it. There are two references to Lomar in the application: (1) a section naming it as Landlord of the premises to be occupied; and (2), in the applicant information section showing the applicant’s names, Lomar appears as “Lomar (sic) Inc. — Dir. Int. (sic)”, without further explanation. The application is unsigned by any of the parties and is apparently completed through entries by Division employees. Other applications are present in the record but appear to be for the sole purpose of noting and approving changes in corporate officers. These applications again show-Lomar in the applicant information as “Lomar (sic) Inc. — Dir. Int. (sic)”
In addition to the applications showing the information described above, Lomar wrote a letter to the Division on May 2, 1989, which appears in the Division’s files. The letter states:
Re: Lease and beverage license for 701 Ridgewood Avenue, Holly Hill, Florida Gentlemen:
This will confirm that Lomar, Inc. does hereby consent to the assignment of the lease on property at 701 Ridgewood Avenue, Holly Hill, Florida, and to the beverage license in connection therewith to be transferred to Desperado’s of Holly Hill, Inc. subject to the existing lease.
Sometime prior to December 2, 1997, a mortgage broker who was arranging a loan for Desperado’s corresponded with the Division. The Division responded with a letter stating that a review of their records, “fails to indicate any liens recorded against this License.” It categorized the License as a “quota License that may transfer at any time, if clear, within the county without penalty. A lien may be placed against this License.” The Lachance Trust then loaned Desperado’s $50,000 secured by the License and filed a lien with the Division pursuant to section 561.65(4), Florida Statutes (1997). Apparently, Desperado’s failed to disclose its agreement with Lo-mar to retransfer the License upon termi *1025 nation of the lease. The Division acknowledged receipt and filing of the lien and in another letter dated December 16, 1997, confirmed that the Lachance Trust lien was the only lien of record against the License.
Desperado’s then defaulted on the Lo-mar lease. Lomar initiated an action against Desperado’s and the Division for possession of the leased premises and to transfer the License back to Lomar. The county court granted Lomar’s requests and ordered the Division to “transfer ... [the] License to the owner Lomar, Inc. from the previous Licensee of record, Desperado’s .... ” The Lachance Trust was not joined as a defendant in Lomar’s action.
The Lachance Trust then attempted to foreclose its lien against the License and joined Lomar as a defendant. Refusing to foreclose Lomar’s interest, the trial court found:
(a) LOMAR, INC. did not have either a hen or security interest in the Beverage License # 74-00475. LOMAR’s interest was one of ownership as reflected in the recorded lease.
(b) LOMAR, INC. was not required to perfect its ownership interest pursuant to Section 561.65, Florida Statutes (1997).
(c) The lease between DESPERADO’S OF HOLLY HILL, INC., and LOMAR, INC. and other relevant documents were on file with the State of Florida, Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco, and were thus available for any person to examine or inspect, including the local office of the Department.
(d) DESPERADO’S OF HOLLY HILL, INC. as lessee, did not have the right to either sell or otherwise encumber Beverage License # 74-00475.
It is an accepted fact that an alcoholic beverage license is a valuable asset and is limited in numbers by the State of Florida. There is no doubt that Lomar, who was originally the Division’s Licensee, could make its premises, upon which a lounge was operated, more valuable to a potential lessee if it could offer a beverage license. It is easy to lease the premises, but the restrictions placed on those who are to be regarded as a beverage licensee do not allow a lessee of the premises to operate under a beverage License issued to the lessor. The statutory scheme plainly requires that the Division Licensee be the operator of the establishment selling alcoholic beverages.
A beverage license is a privilege granted by the legislature and is a creature of statute. Section 561.32, Florida Statutes (1997), provides the sole means for transferring licenses. Subsection (1) provides that licenses shall not be transferable except as set forth in that section. Paragraph (l)(a) contemplates a sale of a “business” and a transfer of a license to the vendee. Paragraph (l)(b) provides for a transfer to a person who enforces a lien pursuant to section 561.65. The remaining provisions are not relevant to the facts of this case.
The record shows that Lomar and Desperado’s complied with the requirements of section 561.32 to transfer the License to the operator of a “business” requiring a beverage license. Additionally, Desperado’s contractually obligated itself under paragraph 26 of the premises lease to re-transfer the License back to Lomar at the involuntary or voluntary termination of the lease. We cannot agree with the trial court’s finding that this contractual obligation made Lomar a continuous owner of the License when the Division reissued the License to Desperado’s after Lomar fully assigned the License to Desperado’s “subject to the ... lease.” The lease provision merely created a valid contractual obligation to re-transfer the License. We find no fault with the method selected by Lo-mar in requiring Desperado’s to re-transfer the License at the expiration of the Lease; covenants to re-assign a liquor Li *1026 cense have been judicially enforced. See, e.g., House v. Cotton, 52 So.2d 340 (Fla.1951).
Further support for the procedure employed by Lomar can be found in the administrative rules. Rule 61A-3.017(5), Florida Administrative Code provides:
(5) All agreements concerning ownership or operation of an alcoholic beverage License shall be attached to and submitted with each new or transfer application for a License, including, but not limited to, management agreements, options to purchase, and retailer franchise agreements. Any such agreements coming into existence following the issuance of a new or transfer License shall be submitted to the Division within ten (10) days of execution (emphasis added).
A copy of the lease containing the agreement with respect to the License was received by the Division on May 5, 1989, which coincided with the date shown on the application to the Division for transfer of the License to Desperado’s. The existence of the rule should place persons on notice that an agreement creating an equitable interest in a license could exist and that special inquiry should be made to the Division to determine whether any agreements concerning ownership or operation of a beverage license are on file with it. Those records were public records available for the Lachance Trust to examine prior to making its loan to Desperado’s, and therefore, it had an opportunity to protect itself from the misrepresentations of Desperado’s.
Our conclusion does not conflict with the conclusion reached in Ronta, Inc. v. City of Fort Lauderdale, 153 So.2d 35 (Fla. 2d DCA 1963), a case relied upon by the parties. The facts in Ronta were quite similar to those in the instant case, but a bank having a security interest in a beverage license prevailed. The bank obtained its security interest and subsequently an assignment of a beverage license from its debtor. The debtor had been a lessee under a lease agreement which created an interest in the license in favor of the lessor. The bank obtained approval of the transfer from the Division. The court found that the bank never had notice of the lease provision “which was never recorded.” Ronta, 153 So.2d at 36. The opinion does not set forth where the lease could have been recorded in order to give constructive notice, but the facts differ from the instant case in that constructive notice was given by Lomar through the delivery of a copy of the lease to the Division pursuant to the requirement of Rule 61A-3.017(5) of the Florida Administrative Code.
While we affirm in favor of Lomar, we note that this case has revealed serious deficiencies in the provisions of Chapter 561 and constitutes a trap for the unwary. We have difficulty with applying the requirements of section 561.32 to the recon-veyance. The legislature, in enacting section 561.65(4), devised a method under which a security interest[1] can be created that is enforceable against a license. But we find that method inapplicable in the instant case as to Lomar’s interest for the reason that the License was not intended as security for any indebtedness to Lomar. Lomar’s interest in the License was the ability to regain title or ownership of it at the end of the lease of the premises. If Lomar had recorded its interest with the Division under section 561.65(4), it may have had the practical effect of discouraging the Lachance Trust from loaning the funds, but technically, section 561.65(4) does not seem to require it. Additionally, sections 561.65(5) and (6) establish a foreclosure procedure that would not be applicable to re-transfer the License to Lomar. Subsections (5) and (6) contemplate that an amount of a lien be established. Lo-mar’s interest could not be reduced to an amount; it required a reconveyance that would not allow junior lienholders to par *1027 ticipate. Based on the above, we believe the legislature should amend the statute to expand section 561.65 so that persons having an interest in a beverage license other than a lien or security interest can place the interest on record with the Division and thereby give notice to subsequent persons who wish to obtain an interest. Sections 561.65(5) and (6) should be modified to establish a procedure for foreclosures when a license is not to be sold at public auction, but is to be conveyed to one having an interest in a license other than a lien or security interest, such as Lomar’s interest in the instant ease. One who wishes to acquire an interest in a license should not have to search every page of every document in the internal files of the Division in order to determine the priority of his or her interest.
Although we do not agree with the reasoning of the trial court that allowed Lo-mar to prevail, we do agree with the result that Lomar had priority over the trust and we therefore affirm.
AFFIRMED.
W. SHARP, J., concurs.
GRIFFIN, J., dissents with opinion.

. Chapter 561 does not define a "security interest.”